216-0010 Kevin Jastin v. Workers' Compensation Comm'n, the East Ending Fire Protection Visitor Council, you may proceed Thank you, Mr. Chair. Good morning, Mr. Chair. I'm here on behalf of the Petitioner Firefighter Kevin Jastin. Before I start talking about Section 6F of the Act, allow me to digress and make a point that I'll bring back that I think is relevant here. Today would have been William C. Murphy's 96th birthday. I think as some of you know, he passed away about two weeks ago. I went to his wake, and the guy is 95 years old, he's dead, and he looked great. God bless Bill Murphy. Here is how I'm going to make a point that's going to get back and relevant to this case. Bill never lost a trial. Never lost a trial. He was truly one of the great legends of trial lawyers in Illinois. One of the reasons he never lost a trial is if he had a bad one, he would hand it off to some poor young lawyer like myself in 1984. It was called a Lou Jack in the earlier days. You got it. Lipke v. Celotex, it was an asbestos case. We represented 48 installations, very small in the scheme of things, asbestos manufacturer out of North Aurora. As in most of those cases, there were originally 27 defendants in the Lipke case. A week before trial, Bill Murphy, knowing he can't win this case, hands it off to me. I say, great, it will be fun. Let's try the case. I didn't realize I was the one and only defendant to be there in front of the jury because the other 26 had settled. Because Bill knew, and this is where we make the point, it's not relevant that the defendant is one of 27 causes or that there were 26 other causes for the plaintiff's condition of ill-being because other causes is not a defense. And that's what's relevant in this case. I don't understand what you mean, other causes is not a defense. Sure. In this case, the prima facie case is made for a firefighter. First, he has to have more than five years on the job. Kevin Johnston had 22, I believe. Then the firefighter has to show in this particular case that he suffered from vascular disease, which is undisputed, and that the vascular disease results in the disability. Again, undisputed. If those elements of proof are made, then Kevin Johnston has created a prima facie case because he benefits from Section 6F. That purpose states? No, it gives rise to a rebuttable presumption. Absolutely. It gives rise to a rebuttable presumption. And the only thing the defendant has to do is introduce any evidence that is contrary to the presumption. That's a different cause. I agree. Absolutely. But except the last two words, another cause. Another cause is contrary to the presumption. And then, according to the Supreme Court in Diedrich, the presumption falls, and it has no value any longer, and the claimant is still the burden party. I agree with most of what you're saying, except in this situation where it's a multifactorial cause. Just like in my asbestos case, there were 27 causes for Mr. Lipke's asbestosis, here there are multiple causes that we all agree. He's obese, he's a smoker, he's got a family history, he's male, and he had 22 years as a firefighter. The presumption is that any condition or impairment of health, directly or indirectly from heart or vascular disease resulting in any disability, shall be rebuttably presumed to arise out of and in the course of employment and shall further rebuttably be presumed to be causally connected to the hazards or exposure of employment. If, in fact, we're going to say if you're a fat firefighter, as admittedly Kevin Johnston was, the presumption is rebutted, that flies in the face of what a presumption is No, I don't think I understand what Diedrich says. Diedrich v. Walters is a Supreme Court case. It provides very succinctly that a rebuttable presumption presates a prima facie case as to a particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with evidence to meet the presumption. However, if evidence opposing the presumption comes into the case, the presumption ceases to operate and the issue is determined on the basis of the evidence induced at trial. If there's evidence contrary to presumption, there is no presumption any longer. I agree 100%. We cite the Franciscan Sisters case, which is another Supreme Court case. Which says exactly the same thing. It's the same thing, absolutely. Counsel, let me see if I understand your argument. You tell me if I'm right or wrong about this and we'll go forward from there. Here you're saying that what the employer has to come forward with is evidence that the employment did not constitute any part, did not play any part in the creation of that condition. Absolutely. So that if an expert came forward for the employer and said, this individual's vascular disease was composed of 99 parts smoking, one part employment, you would say that presumption had not been rebutted. Correct. All Dr. Fentel had to say, and I've written it down, Kevin Johnson's coronary artery disease was not caused, aggravated, or accelerated by the hazards and exposures of firefighting. If that was Dr. Fentel's opinion, we deserve to lose. But you're saying he didn't say that because he said it was most likely, you're saying it was most likely caused, was not sufficient? There's no question. It's caused by his obesity, smoking, and family history. Dr. Fentel never excludes the hazards and exposures of firefighting. So in order for the presumption to be rebutted, the employer has to have evidence before the commission that the employment did not constitute a cause. A cause, however infinitesimal it might be. Dr. Michael Vendor, if you have a carpal tunnel syndrome case, you've all seen Dr. Michael Vendor. He believes if it's not repetitive, forceful gripping, it can't cause carpal tunnel. And Dr. Michael Vendor will say, and he's said many times to this court and the commission, this job cannot be a cause, did not aggravate, did not accelerate the carpal tunnel syndrome. You're an experienced lawyer. You've been around the block. You've deposed lots of doctors. How many times have you ever had a doctor say, I can say with 100% certainty it was caused by X, or I can say with 100% certainty it was not caused by Y? You always have the hedging, and rightly so, because you're not dealing with certainties in medicine. You just had in the case before, Dr. George Holmes, who's a great foot surgeon, he repeatedly says in reports it wasn't caused, accelerated, or aggravated by the accident in question. Dr. Jesse Butler on degenerative disc disease says with absolute certainty it wasn't caused, aggravated, or accelerated by whatever. In the old days, and I don't know if I think some of you would remember these names, we used to have Dr. William Bryce Buckingham, who I think was also a cardiologist from Northwestern. He believed that in no way, shape, or form was any heart attack ever related to employment. On the other hand, we had Dr. Nathaniel Greenberg, who believed every heart attack was caused by employment. You can do a Westlaw search, plug in Buckingham and Greenberg, and I'll bet you come up with about 25 cases. Now, we've got Dr. Fentel in this case. I think he's a preeminent cardiologist. He's an honest man. He was unable to exclude the hazards and exposures of my client's 22 years as a firefighter as a causative factor. So just like it doesn't exclude smoking as a factor because my guy's obese or he has a family history, you don't exclude the occupational hazards and exposures of 22 years of firefighting by pointing out that there's other risk factors out there. Wait a minute. Why do you suggest that there is any presumption that acting as a firefighter is a cause of his heart condition? What you're doing is you're relying on the statute. But once there was evidence contrary to the statute, there no longer is a presumption. I think we've all hopefully agreed what the word contrary means. I put in my brief the Merriam-Webster's Dictionary Definition of Contrary. Contrary proof is proof of a state of affairs which is incompatible. It is not incompatible with 22 years of firefighting being a cause of the coronary artery disease to say there are three or four other causes. As a matter of fact, they are perfectly compatible. I also gave the panel a medical definition of causation. And medicine recognizes it in certain conditions. It is multifactorial. If I can distill this down to your simplest point. You're saying obviously the presumption applies. The presumption was not rebutted because the nature of the evidence to rebut it was insufficient. Is that the gist of what you're saying? The evidence does not even address the presumed fact. I mean, what Arbitrator O'Malley said and subsequently was affirmed verbatim, he said respondents successfully rebutted the presumption outlined in Section 6F by showing that Jackson's preexisting coronary artery disease alone was the cause of the cardiac event. That doesn't even address the presumption. Okay. So let's just take Fentel. Is it Fentel? F-I-N-T-E-L. Fentel? Yeah. So take Dr. Fentel's testimony that he thought that the smoking was most probably the cause of the vascular disease. I mean, that's his quote here. Probably the major cause chronically of developing advanced cataract sclerosis was the claimant's smoking. Do you accept that? Sure. Absolutely. So you're saying that that's insufficient to rebut the presumption because he had to, in addition, say, and I can completely exclude any employment contributor to the vascular disease. I can exclude that completely, 100%. That's what would have been necessary. He would have to say that. And, again, I know we're not supposed to talk about Rule 23 decisions. Matt mentioned the Supreme Court case in Dietrich. So, hypothetically, let's talk about bladder disease where if – I mean, there's two ways to rebut this presumption. One is to say, as a matter of medicine, the hazards and exposures of a firefighter are not the cause of coronary artery disease. But he did say that. No, he didn't. He said, quote, Working as a fireman is not considered to be a risk factor for coronary heart disease. It depends on occupational exposure and data that I don't believe I have available. He said, working as a fireman is not considered to be a regular risk factor for coronary artery disease. And that's what this man is alleged to have had, coronary artery disease. So what caused the coronary artery disease? Most probably it was caused by cigarettes. I don't have the part of the transcript you have in front of you, Your Honor. I think that's out of context. Dr. Fintel admitted that the medical – I hope you would say you thought it was out of context because if it is in context, your argument fails. I think Dr. Fintel, and we've cited in our brief, acknowledged the medical literature. And Dr. Fintel acknowledged – so he acknowledged the general causation. Because he acknowledged the medical literature out there. And he acknowledged the specific causation because he could not exclude for this gentleman his 22 years as a firefighter as not being a cause. Well, what you'd be arguing in response to what Justice Hoffman just read is that Dr. Fintel's statement is contrary to the presumption. It's contrary to the statute because the statute calls for this rebuttable presumption. So I think if Lucretia Romali and the Commission had focused on that – and again, I don't have the benefit of looking at the transcript because I don't think that's the whole context of that quote. But we have to review the decision of the Commission. I mean, what Justice Hoffman just read was Dr. Fintel saying, I don't believe that there's any correlation between work as a firefighter and the development of cardiovascular disease. And that's directly contrary to what the presumption calls for. I would agree if in context – Wait a minute. That's not really what he said. He did not say that there was no correlation between coronary problems. What he said was it was coronary artery disease that there was no correlation with. Working as a firefighter is not considered to be a regular risk factor for coronary artery disease. The statute doesn't talk about presumptions for coronary artery disease. It talks about presumptions for – Heart and vascular disease. Heart and vascular problems or something. Heart and vascular disease. Yeah. Heart and vascular disease. I'm having difficulty with understanding why this statement is not contrary to the presumption. Again, I wish I had the transcript in front of me, but I think you are taking it out of context because we are – Well, if you don't have the transcript in front of you, how do you know I'm taking it out of context? As I did Dr. Fentel's deposition. Well, do you remember what he said? I don't remember. What did he say? I confronted him with the medical literature. Dr. Berry relied upon a particular study. He acknowledged that medical literature was valid. I also asked him if he could specifically exclude it in this case. He told me he couldn't. Give me two seconds. He said it could be a risk factor, and I'm quoting, could be a risk factor based on what his occupational exposure was, comma, but it is not definitely a risk factor, close quote. I agree. I think that's the exact quote that I put in my statement. Thank you. Your time is up. You will have time to reply. The standard for causation for a crime of patient case is might or could. That is the case here. For Dr. Fentel's they cannot definitely do something. It does not rebut the presumption. Thank you. Okay, counsel, you may respond.  Counsel, may it please the court, Britt Eiseley on behalf of the East Indy Fire Protection District. There's no precedent that I'm aware of that establishes the type of evidence that must be presented to rebut the presumption. Have you looked at the legislative history? Briefly I did. I didn't cite it, though. Well, it would have been helpful for you if you had, because in the debate on House Bill 928, which is for Section 6F here, they talked about the rebuttable presumption. And a prior version of that, which was eventually enacted, did not refer to a rebuttable presumption, but referred to a conclusive presumption. So that an employer could come in, instead of having it conclusively presumed that the, in this case, heart or vascular condition was conclusively presumed to have resulted from the employment, would be rebuttably presumed to have resulted from the employment. So the fact that there was that give and take and the fact that it had been softened from a conclusive presumption to a rebuttable presumption, doesn't that then mean that in this circumstance the employer did not have to come in and eliminate every possible employment-related cause here, but could simply, as Dr. Fentel testified, offer up an alternative cause that, in his words, was the most likely cause? Yes, I think that does help the employer's position. Do you have any cases that basically stand for that, that talk about that specific issue that you can cite to us? Well, the same case that we both cited to the Franciscan sisters in Dietrich, in other words, there's not a specific amount of evidence that has to be shown to completely rebut the presumption. It just has to be incompatible or opposite with the presumption. So there's no magical incantation that carries the days? I don't think so. And as Mr. Mielke puts it, the presumption is rebutted when there's contrary proof that is facts incompatible with the presumed facts. Here the presumed facts was that on February 5, 2014, he was performing firefighter duties. We rebutted that presumption by bringing in four firefighters, bringing in Johnston himself and Dr. Fentel. That's a different issue. That's an entirely different issue. That has to do whether the shoveling of the snow is the cause of his heart attack. That's not what we're talking about. We're talking about the presumption that his heart condition is related to his employment. It has nothing whatever to do with the shoveling of the snow at this point in time. Right. Well, that goes to accident. It's clear in the statute, a condition or impairment of health. You've got a presumption that it's because he is a firefighter, right? It doesn't have anything to do with what he's doing. Well, that's true. But just that being the presumption, that doesn't come in as evidence. Which is a legislative victory for a special group of people. It satisfies his obligation to come forward with evidence. But until you come in with evidence contrary to this presumption, he's satisfied his evidentiary requirement. I think we did come in with evidence contrary to the presumption. Well, the presumption first there's the presumption that he was doing something that day that had to do with firefighting duties. We rebutted that and showed that he wasn't doing anything. Yes, please. Would you get off of that? Okay. Look, if the man had no heart problems before and shoveled snow and had a heart attack and he was shoveling snow at the firehouse, it's compensable. That's not what this case is about. The opposing counsel is correct in his brief. It said he could have been on his couch at home and had the heart attack. Exactly right. It might have been compensable via the rebuttable presumption. So going back to Justice Hoffman's question, you know, focus on that and not what he was doing at the time. Then I would point out Dr. Fintell's opinion. That seems to be what we're hung up on. The opposing counsel says, saying it was most likely caused by something else, is that a sufficient rebuttal? I think it is. I think it is based on. Let's have some law on this. Well, I think it is based on the Franciscan sisters and Dietrich, the Illinois Supreme Court case. But I don't know of any precedent that tells us it's got to have this heightened amount of evidence in order to rebut it. I think it's unreasonable to think that it's a conclusive presumption, like you said. There is no such thing as a conclusive presumption. That doesn't exist. Presumptions are either rebuttable or a fact is given. There is no such thing as a conclusive presumption. I guess what I'm trying to say is I don't think that we're required to bring 100% certainty. The phrase in Dietrich is, if evidence is introduced which is contrary to the presumption. So the question becomes, is Fintell's testimony contrary to the presumption? And if the answer to that is yes, the presumption fell and therefore is of no further effect. If the answer to that is no, then he's met his burden of going forward with evidence and the presumption satisfies the burden of going forward. It never changes the burden of proof. Burden of proof is always with the claimant. So does that satisfy as evidence which is contrary to the presumption? I argue that it is. It is evidence that satisfies the requirement that it's contrary to the presumption. Working as a firefighter, he does not consider to be a regular risk factor for coronary artery disease. And you actually cited that. I see it in the commission's decision, his citation. It depends on occupational exposure and data I don't have available to me. So Dr. Fintell specifically said that it's a risk factor. Coronary artery disease has other risk factors such as smoking, diabetes, hypertension, high cholesterol, sedentary lifestyle. And those are enough, in my opinion, to rebut the presumption. And I think that they show an opposite or contrary type of condition that the presumption would fall from. Let me read to you a little bit more out of the legislative history because this example may pertain to the circumstances in this case. And the sponsor of the bill was being asked about the rebuttable presumption. And the question is asked in regards to a firefighter who joins the force when he's 6'1", weighing 200 pounds, and after 20 years has added on 50 pounds and is diagnosed with hypertension. And the question then is, I would presume that you could certainly make a rebuttable presumption that your hypertension wasn't caused by your job. In fact, it may be caused by your weight gain and lack of exercise. The response is, right. And so what would occur under this law is you could bring your action, which you would probably have brought anyway, but you could bring your action and then the information would come in regarding your health problems, regarding your current condition, and regarding the fact that those, that being overweight, being a smoker, other issues have really contributed or caused your illness as opposed to the fact that you went into ten burning buildings without any type of meds. So doesn't that suggest that the contrary evidence, it doesn't have to conclusively exclude employment as a cause, simply that there is some other contributing cause. Yes, I agree. I agree with that. I would ask that this decision be affirmed. I think that the legislative history that I should have looked into helps my position. I also wanted to point out that Mr. Milkey in his brief had suggested that this should be a de novo review. I disagree. I think this is a manifest weight question, that this is really a question about whether there was enough proof given at a trial to rebut the presumption and whether that was against the manifest weight or that otherwise the decision should be affirmed. And, again, I believe the decision should be affirmed. Thank you, counsel. Thank you. Counsel, you have five minutes in reply. I was aware of that legislative history. I did find it. I didn't put it in my brief because, frankly, I don't like it. So the last example that I just read, how is that then not contrary to your position? I don't believe the sponsor of this legislation, per the legislative history that you are aware of, knew the clear import of the words he was using. And it's my understanding, first, we had to brief the legislative history issue, but I think we would all agree we don't refer to legislative history to rewrite a clear statute. The clear words of the statute is not ambiguous. It says what it says. And I'm going to be honest with you. I can't reconcile the sponsor's statements because I read those and I was hoping to find something different. But what he says, if you interpret the statute per what the sponsor says, I'm going to be honest with you, I lose. But I think the sponsor in the legislative history is directly contrary to the simple and plain language of the statute. And I think it would be error for this court to use legislative history to rewrite the statute. If I can address Justice Hoffman's questions. On page 8 of my brief, we have what I deem to be the specific causation issue. I asked Dr. Fentel, can you state within a reasonable degree of medical certainty that his, I said 25 or 23 years as a fireman. In fact, it's 22. And whatever occupation exposure he may have had to combustion material. Can you state that in fact is not a risk factor for this gentleman and was not a causative factor for the ischemic attack in the event of February 5, 2014? I think the transcript goes on for a while. I think I had the court reporter read the question back. I liked my question. Dr. Fentel wasn't answering it. And then he finally answered, quote, it could be a risk factor based on what his occupational exposure was. But it is not definitely a risk factor. I love that answer. That doesn't rebut the presumption. He acknowledges that he can't exclude it. That doesn't rebut the prima facie case. Then as to the general causation, again, this is also on page 8 of my brief. Dr. Fentel agreed with the general statement that the occupation of a fireman is a risk factor for, quote, premature coronary artery disease above and beyond that of other risk factors, close quote. And, quote, there is literature that does relate exposure to smoke as in repetitive fashion as an accelerant for coronary artery disease, close quote. All that the district puts in their brief is on page 8. And they simply say Dr. Fentel is a wonderful cardiac surgeon and, quote, Dr. Fentel testified that there were several potential causes for his heart attack. And that's pretty much it. So a rebuttable presumption requires contrary proof. And I agree, once there's contrary proof, the presumption bursts. The definition of contrary proof is a state of affairs which is incompatible with the presumed fact. I gave the example of red light, green light. If we presume the light's red, somebody testifies it's green, puff, the presumption vanishes. If, on the other hand, there's five potential causes for a condition, evidence of three, four, or five other causes doesn't rebut the presumption that the employment and the exposure and hazards of the employment was a cause. I don't think this court should attempt to rewrite the definition of a word contrary or eliminate the idea of multiple causes and relieve or force a plaintiff or a petitioner to prove anything other than a cause. We all know there are many factors out there that can and will say the employment was not a cause or was not any cause, did not accelerate, did not aggravate the underlying condition. That's all they had to do here. They didn't do it because they think it's contrary to the medicine. And I just want to be clear here, just in your global position here, in order to successfully rebut the presumption, the employer must absolutely be able to exclude any employment feature from the condition, any employment contributing cause. I think either generally or specifically to say that medicine just doesn't support the causal connection, okay? And I think that's certainly true on some kinds of cancers. I think there's a presumption about cancer being causally related. I think we would agree that all cancers cannot be causally related to your exposure as a firefighter. So there can be a medicine, the state of the medicine rebuttal, or there could be a specific rebuttal. The firefighter was only on an apartment for five years, which is the bare minimum necessary for this presumption to apply. And I could see some doctors saying, no, as a matter of medicine, five years' exposure just is not enough. We don't have that in this case. So it's not some impossible hurdle. I think you're not trying to read your mind. I think you're trying to imply that there's some impossible hurdle for a respondent to present medical evidence. It may not be an impossible hurdle, but it requires a doctor, an expert for the employer to be able to say, I can rule out an employment-related cause 100%. I think that's what we saw in that cancer case, and I think that's what we saw in the CRBS case with Dr. George Holmes. And that's what I see twice a week when I get Ionesin. That's your position. That's my position. Okay. Okay, very good. Thank you, counsel, both, for your arguments in this matter. We'll be taking our advisement. Written disposition shall issue.